IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE DELK, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATED HEALTH SYSTEMS, INC.,<br><br>Defendant. | Civil Action No. 2:24-cv-00802<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

**COLLECTIVE AND CLASS ACTION
COMPLAINT AND JURY DEMAND**

Plaintiff, JULIE DELK ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendant AUTOMATED HEALTH SYSTEMS, INC. ("Defendant"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2. Plaintiff and all other similarly situated individuals work or worked for Defendant as non-exempt hourly employees both remotely and at Defendant's brick and mortar facilities situated across the United States.

3. Pursuant to their company-wide policies and procedures, Defendant failed to pay Plaintiff, and other similarly situated employees, for all hours worked and statutory mandated

overtime for all hours worked over forty (40) in a single workweek. Defendant's time-rounding policy and practice is used in such a manner that it results, over a period of time, in the failure to compensate their employees properly for all time worked.

4. Defendant's systemic violations of federal wage laws and state common laws were willful.

5. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make her, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

6. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

7. Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer…in any Federal or State court of competent jurisdiction."

8. Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

9. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

10. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

11. Defendant's hourly, non-exempt employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

12. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14. This Court has personal jurisdiction over Defendant because it conducts business within the state of Pennsylvania, has its principal place of business and headquarters in Pennsylvania, is registered with the Pennsylvania Department of State and employs individuals within the state of Pennsylvania.

15. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Pennsylvania, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

## VENUE

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

17. Plaintiff JULIE DELK ("Plaintiff") is a Florida resident who has worked for Defendant as a non-exempt hourly remote employee in Florida within the last two years.

18. Defendant pays Plaintiff for her services in the form of an hourly wage, for all credited hours worked at the rate of $16.00 per hour.

19. Plaintiff signed a consent to join this collective action lawsuit. **Exhibit 1**, Delk Consent to Join.

20. Defendant is a Pennsylvania corporation (Registration No. 683934) with its headquarters and principal place of business located at 9370 McKnight Rd. Pittsburgh, Pennsylvania 15237.

21. Defendant is a national health services management company that employ nearly one thousand technical and customer service professionals in connection the administration of large-scale public health programs for state and local governments throughout the United States.

## GENERAL ALLEGATIONS

22. Plaintiff is presently employed by Defendant as a Customer Service Representative ("CSR"), a non-exempt hourly position.

23. Defendant's hourly/non-exempt employees like Plaintiff must adhere to rigid schedules that require working at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

24. At the onset of employment, Defendant offered Plaintiff and the similarly situated hourly employees a fixed hourly rate.

25. Plaintiff and other similarly situated hourly employees accepted Defendant's offer of a fixed hourly rate in exchange for the performance of their job duties.

26. After the agreement was made to pay Plaintiff and other similarly situated employees at a fixed hourly rate, and after said employees performed their job duties, Defendant systematically and repeatedly failed to pay the promised hourly wage, as explained herein.

27. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and other members of the Collective/Class.

28. Defendant required its employees to be prepared to perform their job duties at their scheduled shift start time.

29. For Plaintiff and other similarly situated remote employees, that meant having all the required computer systems and programs loaded at the start of their scheduled shifts.

30. Indeed, on May 10, 2024, Plaintiff received an email from her supervisor, Reginald McCellon, advising Plaintiff and dozens of other employees that they needed to improve their adherence scores. Attached to the e-mail, Mr. McCellon provides the employees with a document titled "What I do daily to keep my adherence up," which encourages the employees to be "at [their] desk at shift start at most 15 min early to make sure all [their] monitors work, no pending updates, check emails & Teams chat to see if any new/important updates/ issues, etc."

31. At the same time, Defendant maintained a written policy that prohibited employees from clocking in more than seven (7) minutes before the start of their scheduled shifts.

32.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogeneous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA).[1]

33.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2. "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*.

34.     The FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

35.     However, in addition to the unpaid work Defendant instructs its CSRs and other similarly situated employees to perform preparing their computers, when Plaintiff and other members of the Collective/Class clock in or out before/after their scheduled start/end time, it is Defendant's policy to "round" their time to the nearest quarter hour. The rounding policy is reflected in Plaintiff's paystubs, including the sample provided below, which reflects timekeeping in quarter-hour increments:

---

[1] *See*, https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited 5/29/24).



36.     The U.S. Department of Labor adopted a regulation that generally allows rounding practices. However, Defendant's rounding policy does not qualify as a permissible rounding policy under the FLSA. *See* 29 C.F.R. § 785.48(b).

37.     The regulation provides that such rounding practice will be accepted, "provided it is used in such a manner that will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id*.

38.     If an employer's rounding practice is not implemented in a manner that permits both upward and downward rounding, then the system is not neutral and will result, over a period of time, in a failure to compensate employees properly for all the time they have actually worked.

39.     Specifically, as a matter of both policy and universal practice, members of the Collective/Class are prohibited from clocking in more than seven minutes early and are not allowed to clock out early or after their shift end time without risk of discipline.

40.     Defendant's written policy regarding clocking in states that "[e]mployees are not authorized to clock in ADP more than 7 minutes prior to the start of their scheduled shift."

7

41. In the same written policy, Defendant states, "Time Theft is defined as when an employee is paid for work they have not actually done or time they were not actually working …[e]xamples include…[r]remaining clocked in after the shift has ended …" and "clock in ADP more than 7 minutes prior to the start of their scheduled shift." The policy goes on to state that "[e]mployees who violate this policy will be subject to timecard adjustment, repayment…disciplinary action up to and including termination."

42. Moreover, as a matter of both policy and universal practice, Plaintiff and members of the Collective/Class are not permitted to arrive late, leave early, and must be ready to field customer interactions by the start of their scheduled shift.

43. For example, under Defendant's written policies, if Plaintiff arrives late to her shift or leaves early at the end of the shift, an "occurrence" will be added to her record, which may subject her to discipline, up to and including termination.

44. Thus, members of the Collective/Class are categorically prevented from benefiting from the time rounding policy at the beginning of the workday both because they will be disciplined for clocking in after the start of a shift and because the employee can only clock in within the seven-minute window before the shift starts. Indeed, on a routine day, Defendant will benefit both from the time rounded away at the start of each employee's shift and any additional off-the-clock work that occurs prior to clocking in (equipment checks, computer bootup, reviewing e-mails/chats).

45. Likewise, Defendant's policies and practices prevent employees from benefiting from the rounding system at the end of their shift.

46. As stated above, Defendant's employees are not permitted to leave early or work beyond the end of their shift. Thus, in order to avoid disciplinary action, Plaintiff and members of the Collective/Class must clock out exactly at the end of their shift or moments after the shift ends.

47. For example, Plaintiff is scheduled for an 8-hour shift beginning at 9:30 AM. If she clocks in as permitted by the policy, she will clock no earlier than 9:23 AM and no later than 9:00 AM. As such, if she complies with Defendant's policies, her time will always be rounded down, unless she clocked in precisely at 9:00 AM. Similarly, her scheduled shift ends at 6:00 PM. If she complies with Defendant's policy not to clock out early or more than a few minutes after the end of her shift, then she cannot make up the lost minutes from the start of her scheduled shift, and, in most cases, will lose several additional minutes under the rounding policy at the end of her shift.

48. In addition to the time rounded away, any work tasks performed prior to clocking in are also not compensated (*see* email referenced above encouraging employees to start performing work "15 min" early).

49. Examples of specific workweeks where Defendant failed to pay Plaintiff all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, include the following:

**Pay Period of March 4, to March 17, 2024**

- Plaintiff was paid at a rate of $16.00 per hour for the 40 regular hours Defendant credited her with as having worked in each of the two weeks.

- With unpaid time due to the unlawful rounding policy of between five (5) to fifteen (15) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional twenty-five (25) to seventy-five (75) minutes at her overtime rate of $24.00 during each of the two overtime workweeks.

9

50. Defendant's policy uses a record of minute-by-minute increments of work to "round" up or down, and to identify employees who are clocking in more than seven minutes before the start time or who clock out early or late at the end of their shifts.

51. The practice of rounding against the employee is a regular practice, enshrined in company policy rather than a rare or random event.

52. The way Defendant implements its rounding policy, when combined with Defendant's other workplace policies, favors the Defendant disproportionally. Thus, Defendant's time rounding policy is unlawful.

## FLSA COLLECTIVE ACTION DEFINITION AND ALLEGATIONS

53. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> **all persons who work or worked for Defendant in hourly non-exempt positions at any time during the three years preceding the filing of this Complaint up through and including judgment and who were subject to the time rounding policy described herein.**

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

54. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated employees.

55. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

56. Defendant assigned and/or was aware of all of the work that Plaintiff and the members of the FLSA Collective performed.

57. Defendant implemented and enforced an unlawful time-rounding policy, as explained herein.

58. Upon information and belief, Defendant is applying the same unlawful compensation policies to all similarly situated employees whether they work remotely or at Defendant's facilities nationwide.

59. As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

   b. Willfully implementing and enforcing an unlawful (non-neutral) time-rounding system;

   c. Willfully instructing Plaintiff and the members of the FLSA Collective to perform work off-the-clock; and

   d. Willfully failing to record all of the time that employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

60. Defendant is aware or should have been aware that federal law requires them to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

61. Defendant's unlawful conduct has been widespread, repeated, and consistent.

62. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).

63. The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan (including Defendant's time-rounding policy); and (d) their claims are based upon the same factual and legal theories.

64. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

65. The key issue — the amount of uncompensated off-the-clock work owed to each employee — does not vary substantially among the proposed FLSA Collective members.

66. Many similarly situated current and former members of the FLSA Collective have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

67. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

68. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

69. Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

70. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## **RULE 23 CLASS ACTION ALLEGATIONS**

71. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> **all persons who work or worked for Defendant in hourly non-exempt positions at any time during the three years preceding the filing of this Complaint up through and including judgment and who were subject to the time rounding policy described herein.**

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition as necessary.

72. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

73. There is a well-defined community of interest among Rule 23 members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

   a. Whether Defendant's failure to pay the Rule 23 Class members for all hours worked at their agreed-upon rate constitutes a breach of contract.

   b. Whether, if no contract exists between the parties, Defendant was unjustly enriched by virtue of its policies and practices with respect to the Rule 23 Class members' pay, including the time rounding policy that systematically leads to unpaid work.

74. Plaintiff's claims are typical of those of the Rule 23 Class in that she and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Class members.

75. Plaintiff will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

76. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

77. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

78. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

79. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.
### FAILURE TO PAY OVERTIME WAGES

80. Plaintiff re-alleges and incorporates all previous paragraphs herein.

81. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

82. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

83. Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

84. Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

85. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

86. At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform no less than five (5) to fifteen (15) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

87. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

88. Defendant's violations of the FLSA were knowing and willful.

89. Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for all work activities, but did not.

90. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## (Rule 23 Class Action)
## BREACH OF CONTRACT

91. Plaintiff realleges and incorporates all previous paragraphs herein.

92. This Count applies only to workweeks where the FLSA's overtime protections are inapplicable.

93. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed on Defendant's behalf.

94. Defendant's contractual promises to pay Plaintiff and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiff and the Rule 23 Class members.

95. Upon information and belief, each Rule 23 Class member, including Plaintiff, has an hourly rate of approximately $16.00 per hour.

96. Plaintiff and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift, including the unpaid, off-the-clock work that was required of

them, accepted by Defendant, and that they performed in connection with unlawful time-rounding policy and practices, described herein.

97. By not paying Plaintiff and every other Rule 23 Class member the agreed-upon hourly wage for all the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Class.

98. On occasion, Rule 23 Class members missed time from work causing them to work under 40 hours in a given week.

99. To the extent there is no other state law remedy available, Plaintiff and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

100. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**UNJUST ENRICHMENT**

101. Plaintiff re-alleges and incorporates all previous paragraphs herein except for any paragraph, sentence, or averment that alleges a contract or agreement to pay wages existed between the Plaintiff and Defendant, or the Rule 23 Class members including, but not limited to, paragraphs 93–100.

102. This Count is pleaded in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3) in the event it is determined that no employment contract or agreement existed between Plaintiff and Defendant as alleged in Count II. In other words, to the extent that

this Court ultimately finds that no contract provision or agreement expressly governs the claims arising from the allegations in this Complaint, Defendant is nonetheless liable for unjustly enriching itself at Plaintiff's and the Rule 23 Class members' expense.

103. This Count applies only to workweeks where the FLSA's overtime protections are inapplicable.

104. Defendant benefited from the unpaid work performed by Plaintiff and the Rule 23 Class prior to the start of their shifts and after their shifts. Additionally, Defendant benefited by failing to pay their employees at the legal and applicable wage rates set by state and/or federal law, thereby failing to pay all minimum wages and overtime wages in compliance with the law.

105. Defendant was aware or should have been aware that it was receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

106. Defendant's acceptance and retention of the benefit of Plaintiff and the Rule 23 Class members' unpaid labor was inequitable and resulted in Defendant being unjustly enriched.

107. As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiff and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf, on behalf of the putative FLSA Collective and on behalf of the Rule 23 Class requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims for common law breach of contract and unjust enrichment (Counts II and III);

c. Ordering Defendant to disclose in electronic format, or in print if no computer-readable format is available, the names and addresses of all collective action Class members and the Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective/Class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the FLSA collective action and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f. Declaring Defendant's violation of the FLSA was willful;

g. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Class the full amount of damages and liquidated damages available by law;

h. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

i. Awarding other pre- and post-judgment interest to Plaintiff on these damages; and

j. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Respectfully submitted,

Date: June 3, 2024

/s/Jonathan K. Cohn, Esquire
Jonathan K. Cohn, Esquire
PA ID No. 92755
jcohn@stembercohn.com
Maureen Davidson-Welling, Esquire
PA ID No. 206751
mdw@stembercohn.com
**STEMBER COHN &**
 **DAVIDSON-WELLING, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
T.: (412) 338-1445

Charles R. Ash, IV, Esquire
(*pro hac vice forthcoming*)
cash@nationalwagelaw.com
**ASH LAW, PLLC**
402 W. Liberty Street
Ann Arbor, MI 48103
T.: (724) 234-5583

Oscar Rodriguez, Esquire
(*pro hac vice forthcoming*)
orod@hooperhathaway.com
**HOOPER HATHAWAY, PC**
126 S. Main Street
Ann Arbor, MI 48104-1903
T.: (734) 662-4426

*Counsel for Plaintiff and the Putative/Collective/Class Members*