# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

## PITTSBURGH

| | |
|---|---|
| JULIE DELK, INDIVIDUALLY, AND ON BEHALF OF OTHERS SIMILARLY SITUATED; AMY BABCOCK, MICHELLE ROLDAN, <br><br> Plaintiffs, <br><br> vs. <br><br> AUTOMATED HEALTH SYSTEMS, INC., <br><br> Defendant, | 2:24-CV-00802-MJH |

## MEMORANDUM OPINION

On June 3, 2024, Plaintiffs Julie Delk, Michelle Rodlan and Amy Babcock, filed this action against Defendant, Automated Health Services. (ECF No. 1). On March 14, 2025, Plaintiffs filed an Amended Complaint, bringing Class/Collective action claims under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, alleging violations of the Fair Labor Standards Act for overtime compensation, ("FLSA"), 29 U.S.C. § 201, *et seq*, the Massachusetts Wage Act, the Massachusetts Overtime Act, and for common law breach of contract or unjust enrichment. (ECF No. 39). On March 14, 2025, Plaintiff filed a Pre-Discovery Motion for Conditional Certification and Court-Authorized Notice and accompanying brief. (ECF Nos. 41 & 42). On April 21, 2025, Defendant filed its Brief in Opposition. (ECF No.48). On May 19, 2025, Plaintiffs filed their Reply. (ECF No. 51). On October 16, 2025, the Court heard argument on Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice. All issues have been briefed and argued and are ripe for disposition. For the reasons that follow, Plaintiffs' Motion will be granted in part and denied in part.

1

I.      **Statement of the Facts**

Defendant, Automated Health Services, Inc., provides business process outsourcing services to businesses and government agencies throughout the United States. Defendant has a contract with the Massachusetts Executive Office of Health and Human Services to provide contact center services for MassHealth members, applicants, providers, provider applicants and other interested parties. Defendant also works on projects in other states. Plaintiffs, Julie Delk and Michelle Roldan worked as remote hourly Customer Service Representatives ("CSRs") on the Massachusetts Medicaid project. (ECF Nos. 42-2, 42-3, at ¶¶ 2-3). Opt-in Plaintiffs Clarissa Lewis and Kimberly Bigelow were employed as hourly CSRs on the Florida Medicaid project. (ECF Nos. 42-4, 42-5, at ¶¶ 2-3). Named Plaintiff Amy Babcock was employed in two different hourly positions: (1) an hourly Eligibility Specialist, and (2) a Quality Assurance Associate, and worked on the Wyoming Medicaid project. (ECF No. 42-6, at ¶¶ 2-3). Plaintiffs allege that all of Defendant's hourly employees were subject to the same quarter of an hour time rounding policy, contained in AHS's Employee Manual. The time-rounding and overtime policy covers "all non-exempt employees of AHS." (ECF No. 42-7). The time-rounding policy states as follows:

> For the purposes of calculating hours of work, Automated Health Systems will "round" all time reported by the finger scanner to the nearest quarter hour. Time recorded seven (7) minutes before or seven (7) minutes after a quarter hour will be rounded to that quarter hour for pay purposes (For example, scanned entries between 7:53 a.m. and 8:07 a.m. will all be paid as if the entry was 8:00 a.m. A scanned entry of 8:08 a.m., however, will be paid as if the entry was 8:15 a.m.). The "rounding" of hours for payroll purposes, is not a license to be tardy. Employees are ordinarily expected to be at their work stations and prepared to work at the start of their shifts.

(ECF No. 42-7). Plaintiffs also allege that AHS's manual contained a "Time Theft" policy which provides examples employee conduct that Defendant considers time theft, such as: "(1) remaining clocked in after the shift has ended, (2) clocking into ADP but failing to log into Five9 to take calls, and (3) Employees are not authorized to clock in [to]

2

ADP more than 7 minutes prior to the start of their scheduled shift." (ECF No. 42-8). Plaintiffs contend that, taken together, these policies create a timekeeping policy that is not neutral and unlawful on its face. (ECF No. 42, at 8). Plaintiffs allege that Defendant stopped using this time rounding policy on May 13, 2024. (ECF No. 39, at ¶ 47).

In addition to the time rounding policy, Plaintiffs allege that Defendant does not pay Plaintiffs for the time that it takes them to bootup the required applications to perform their jobs. (*Id.* ¶ 66). Plaintiffs allege that the bootup time can take anywhere from ten to fifteen minutes, and in some cases, even more time. (*Id.* ¶ 67). Plaintiffs request that this Court issue an order conditionally certifying two FLSA collectives, defined as:

1. All persons who work or worked for Defendant at any time from June 3, 2021 in hourly non-exempt positions, were required to bootup a computer to perform their jobs, and who were subject to the time rounding policy (the "Time Rounding Collective");

2. All persons who work or worked for Defendant as an hourly non-exempt remote customer service representative ("CSR") at any time from May 13, 2024 to present (the "Computer Bootup Collective").

(ECF No. 41).

Plaintiffs' also request that this Court issue an order that directs and allows as follows:

1. Implementing a procedure to send Court-approved Notice of this action to putative members of the proposed Collectives via U.S. Mail and email;

2. Requiring Defendant to identify all putative members of the proposed Collectives by providing a list of their names, last known addresses, dates and locations of employment, phone numbers, and e-mail addresses in electronic and importable format, e.g., a Microsoft Excel spreadsheet, within 14 days of the entry of the order;

3. Approving a sixty (60) day opt-in period from the date the Court-approved Notice is sent during which putative members of the Collectives may join this case by returning their written consents; and

3

      4. Approving the short reminder Notice to be sent to the Collectives via text message and e-mail thirty (30) days into the opt-in period.

(*Id.*).

## II.    Relevant Legal Standard

Section 7 of the FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a work week. 29 U.S.C. § 207(a). Under the FLSA, a plaintiff may bring a collective action on behalf of themselves "and other employees similarly situated" to recover unpaid overtime compensation. 28 U.S.C. § 216(b). Courts in the Third Circuit "follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). At the first step, "the court makes a preliminary determination as to whether the named plaintiffs have made a modest factual showing that the employees identified in their complaint are similarly situated." *Id.* A plaintiff's burden at the first step is light and can be met by "produc[ing] some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 195 (3d Cir. 2011), *rev'd on other grounds sub nom.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013).

   If this burden is satisfied, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi*, 729 F.3d at 243. Given the "modest burden" at the first stage of the proceedings, "motions for conditional certification are generally successful." *Id.* "Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." *Waltz v. Aveda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016) (citation omitted). "Generally, plaintiffs meet the standard by producing some

evidence indicating common facts among the parties' claims, and/or a common policy affecting all the collective members." *Hively v. Allis-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418, at *3 (W.D. Pa. Nov. 5, 2013). At the step one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of plaintiffs' claims. *See Pereira v. Foot Locker*, 261 F.R.D. 60, 67 (E.D. Pa. 2009); *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 353 (W.D. Pa. 2018).

### III. Discussion

The present motion concerns only the first phase of the conditional class certification process. At this stage, a plaintiff is only required to show a "modest factual showing" that similarly situated employees were injured as a result of a single decision, policy or plan before the proposed class can be conditionally certified. *Lepkowski v. Telatron Marketing Group, Inc.*, 766 F. Supp. 2d 572 (W.D. Pa. 2011). Defendants provide various arguments, asserting that Plaintiffs fail to meet the requisite standard. Plaintiff argues that the allegations, contained within the First Amended Complaint, plus Plaintiffs' provided affidavits, are sufficient to establish the modest factual showing for the current phase of conditional class certification such that their proposed collectives are proper.

#### A. Expert Declaration

First, the Court will address the expert declaration used by Plaintiffs in support of the present motion. Defendant argues that the expert declaration and the Sampling Data therein, which were created for the purposes of mediation and relied upon by Plaintiffs in the present motion, must be Stricken. (ECF No. 48, at 8-9). Particularly, Defendant argues that Plaintiffs violated Rule 408 of the F.R.E and a confidentiality agreement signed by both parties before mediation. (*Id.*).

Plaintiffs argue that the language of the agreement allows for the use of the Sampling Data, because such evidence would otherwise be subject to discovery, and that the advisory notes of FRE 408 also provide for the same. (ECF No. 51, at 4). Further, Plaintiffs argue that the Sampling Data was provided on November 22, 2024, two weeks before Plaintiffs signed the Confidentiality Agreement. (*Id.*)

The Confidentiality agreement states, "[e]vidence otherwise subject to discovery or disclosure will not become protected from discovery or disclosure or inadmissible solely because of its introduction or use in the mediation. (ECF No. 48-3, Exhibit 1, at ¶ 2). Further, the Advisory Committee Notes of FRE 408 state, "the rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." Here, the expert declaration and the Sampling Data would be subject to discovery and Defendant does not suggest otherwise. Thus, the expert declaration will not be stricken.

### B.  "Similarly Situated" for Conditional Class Certification

At this conditional certification stage of these proceeding, the Court must make a preliminary finding as to whether the other employees described in Plaintiffs' Motion for Conditional Certification can be provisionally categorized as "similarly situated" to Plaintiffs. To do so, Plaintiffs must produce some evidence, "beyond pure speculation," of a factual nexus between the way Defendant's alleged unlawful policies or practices affected them and the way those policies and practices affected those to whom opt-in notice would be sent if conditionally certified. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013). Plaintiffs can satisfy this standard by "producing some evidence indicating common facts among the parties' claims, and/or a common policy affecting all the collective members." *Meals v. Keane Frac GP LLC*, 2017 WL 2445199, at *3 (W.D. Pa. 2017).

Stated differently, Plaintiffs must show three things: (i) an employer policy, (ii) that affected Plaintiffs in a particular way, and (iii) that also affected other employees in a similar way. *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014).

In this case, Plaintiffs rely on the declarations of the three named Plaintiffs and two opt-in Plaintiffs, all of whom allege that they were subjected to Defendant's time rounding and bootup policy, which they assert is illegal. Four of these Plaintiffs were employed as CSRs and one was employed as an Eligibility Specialist, and later, a Quality Assurance Associate. (ECF Nos. 42-2, 42-3, 42-4, 42-5, & 42-6). Plaintiffs were physically located and worked in multiple states such as Florida and Massachusetts. (*Id.*). Plaintiffs also worked on projects within multiple states, such as Florida, Massachusetts and Wyoming. (*Id.*). Plaintiffs argue that the affidavits are sufficient to establish the required modest factual showing that the employees contained within their proposed conditional collectives are similarly situated, because they were all subject to Defendant's time rounding and bootup policies. (ECF No. 42, at 14-22). Defendant argues that Plaintiffs' proposed conditional collectives are too broad and encompass various employees that are part-time or not similarly situated to Plaintiffs based upon the record. (ECF No. 48, at 9-12).[1]

Upon review of the First Amended Complaint and the record, the Court finds that Plaintiffs have met the modest factual showing to establish a conditional collective; however, Plaintiffs' proposed collectives are too broad considering the record. The First Amended Complaint, Sampling Data, and provided affidavits, focus upon the effect of Defendant's policies on CSRs. Four of the current Plaintiffs worked or are working as CSRs. Even so, Plaintiffs'

---

[1] Defendant also argues that Plaintiffs fail to identify a common unlawful rounding policy or practice. (ECF No. 48, at 12-23). Defendant's argument related to the lawfulness of the rounding policy primarily focuses on the time that Plaintiffs allegedly gained or lost, which goes to the merits of the issue. The Court must not address the merits at this stage. *See Pereira v. Foot Locker*, 261 F.R.D. 60, 67 (E.D. Pa. 2009); *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 353 (W.D. Pa. 2018).

proposed collectives encompass all of Defendant's employees, which is too broad, given the record. Plaintiffs have not pled facts or provided evidence sufficient for this Court to approve any collective which includes all of Defendant's employees. As such, the Court will certify more limited conditional collectives, as follows:

(1) All persons who work or worked for Defendant at any time from June 3, 2021 until May 13, 2024 as a full-time hourly non-exempt Customer Service Representative, were required to bootup a computer to perform their jobs, and who were subject to the time rounding policy (the "Time Rounding Collective");

(2) All persons who work or worked for Defendant as a full-time hourly non-exempt remote Customer Service Representative ("CSR") at any time from May 13, 2024 to present (the "Computer Bootup Collective").

### C. Equitable Tolling

Plaintiffs argue that the statute of limitations for potential opt-in plaintiffs should be tolled because of judicial delay. (ECF No. 42, at 25). Plaintiffs cite *Hart v. Gov't Emps. Ins. Co.*, 609 F. Supp. 3d 323, 330 (M.D. Pa. 2022), in which the court recognized that courts within the Third Circuit "have held that judicial delay may be an appropriate basis to equitably toll the FLSA limitations period." The *Hart* court continued, stating, "[e]quitable tolling based upon judicial delay is particularly appropriate in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions under 29 U.S.C. § 216(b)." Defendant argues that the statute of limitations should not be equitably tolled, because such a remedy is improper under Third Circuit precedent and the given the circumstances of the present case. (ECF No. 48, at 24).

The Third Circuit has identified the following three principal situations where equitable tolling is appropriate: "(1) if the defendant has actively misled a plaintiff respecting that plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) if the plaintiffs have in some extraordinary way been prevented from asserting their rights; or (3) if the plaintiffs have timely asserted their rights mistakenly in the wrong forum." *Williams v. Bob Evans Restaurants, LLC*, 2022 WL 1120048 (W.D. Pa. 2022) (citing *Podobnik v. USPS*, 409 F.3d 584, 591 (3d Cir. 2005). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not as a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). Plaintiffs bear the burden to prove the application of such tolling. *Courtney v. LaSalle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997).

While district courts within the Third Circuit have applied equitable tolling in situations involving judicial delay, the Third Circuit's standard for the application of such a remedy is clear. Plaintiffs have not pointed to any evidence within the First Amended Complaint or any of the provided affidavits to show any of the three principal situations are implicated in this matter. Plaintiffs do argue that "Defendant utilized a time rounding system that quietly rounded away employees' time, rather than paying them for the actual time worked." (ECF No. 42, at 24). The alleged illegality of the time rounding system does not in and of itself show that Defendant misled Plaintiffs as to any cause of action. In fact, the policies communicate how Defendant calculates time. The unlawfulness of the time rounding policy itself is a completely different issue. As such, Plaintiffs' request for equitable tolling will be denied.

### D. Notice and Statute of Limitations

9

Plaintiffs have provided a proposed Notice, attached as Exhibit 1, to their Memorandum in Support to Conditionally Certify a FLSA Collective. (ECF No. 42-1). Defendant does not make any arguments contesting the use of the proposed notice or communication methods provided by Plaintiffs within its Brief in Opposition. However, Defendant does argue that any notice sent to opt-in plaintiffs should be pursuant to a two-year statute of limitations, not a three year, because the alleged violations in this case were not willful. (ECF No. 48, at 30).

Any actions under the FLSA must be commenced within two years of the alleged violation, or within three years if the violation is willful. 29 U.S.C. § 255(a). To adequately plead a violation is willful, a plaintiff must allege the entity in violation "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)). The "willfulness" standard is scrutinized under the same "lenient standard" used in the first stage of FLSA conditional certification of the class leaving a more in-depth factual analysis for the later stage of certification. *See Titchenell v. Apria Healthcare Inc.*, 2011 WL 5428559, at *8 (E.D. Pa. Nov. 8, 2011). Although, whether the allegations were willful go to the merits of the case, which need not be decided at this stage. *See Arroyo v. Aspen Construction Services Inc.*, 2020 WL 4382009, at *7 (2020).

The Court will not determine whether Defendant's alleged violations were willful at this stage. Plaintiffs' allegations that Defendant willfully violated the FLSA are sufficient to warrant notice based upon a three-year statute of limitation. *See* (ECF No. 39, at ¶¶ 6,

94, & 136). The Court will rule on the size and scope of the class after discovery is complete and if final certification of the class occurs.

### IV.     Conclusion

For the reasons above, Plaintiffs' Pre-Discovery Motion for Conditional Certification and Court-Authorized Notice will be granted in part and denied in part. A separate order to follow.

DATE: November 10, 2025

Marilyn J. Horan
United States District Judge